Oct. 1839.

Sprague and others v. Duel and Duel.

# SPRAGUE and others *vs.* DUEL and DUEL.

When a deed is sought to be set aside from the mental incapacity of the grantor, such incapacity must be fully proved.

If there is mental imbecility in a grantor, not amounting to incapacity to contract, and the grantee practices upon such mental weakness to procure a favorable conveyance, such conveyance, so procured, will be set aside.

But the court will take into consideration all the circumstances existing at the time the conveyance was made, and judge whether at *that time* the consideration was adequate *or the contract unequal.*

THE facts in this case sufficiently appear in the the opinion of the court.

*T. T. Sherwood,* for complainants.

*S. G. Haven,* for defendants.

THE VICE CHANCELLOR. The proofs in this case shew substantially that Reuben Sprague, the ancestor of the complainants, was naturally of a feeble and inefficient mind—that the imbecility of his mind was increased by family troubles arising from an insane wife, a large number of infant children who could not have the advantage of a mother's care, and for whom it was difficult for him under such circumstances to provide the means of support; and from the state of his own bodily and mental vigor consequent upon the frequent recurrence of epileptic fits—all which had a tendency to break down his resolution, impair his energies and discourage his efforts; and which led, under the advice of a committee of the Friends' Society, of which he was a member, to the conveyance of his real and personal estate to the de-

fendants for the payment of his debts and the support
of himself and his insane wife during their lives.

The bill is filed in this case to set aside such conveyance, for the inadequacy or absence of consideration—for the mental disability of the grantors—for the undue influence of the grantees over the grantors—and for the constructive found practised by the grantees upon the grantors to procure such conveyance.

It is to be assumed that Huldah Sprague, the wife of Reuben Sprague, was insane at the time of the execution of the conveyance by her. I say it is to be assumed, because she is proved to have been insane before, and she is not proved to have enjoyed a lucid interval at the time of the conveyance; but she died before her husband, and her insanity can have no effect upon the determination of this cause, except so far as it may go as a matter of evidence to affect the conduct of the defendants.

The conveyance mentioned in the pleadings was made in March, 1831. Huldah Sprague died in July, 1831, Reuben Sprague in Oct. 1833, and this bill was filed by Reuben Sprague's heirs to set aside the conveyance, in May, 1837.

The first question that arises is, had Reuben Sprague the legal capacity to convey in March, 1831, at the time he executed the deed to William J. Duel?

Upon this point a great number of witnesses have been examined, and the testimony read upon the hearing comprised about five hundred legal pages of evidence. The witnesses evidently differ in their own opinions, through every shade of mental competency, from perfect sanity to complete incapacity. From all of the testimony taken together, I am, how-

ever, led to the opinion, herein before expressed, that Reuben Sprague was naturally a man of feebler mind than the average intellect of persons of his situation in life; that he had not sufficient energy of mind, originally, to grapple strongly with the troubles, the difficulties, the embarrassments and misfortunes of life. Such a man would be prone more readily to sink under the pressure of adverse circumstances, than a man of stronger intellect. His mind would naturally grow more and more enfeebled and helpless, as trouble, difficulties and misfortunes thickened around him. The proofs shew that he had enough of these to discourage even a stronger mind. His wife was insane and indecent, and could not perform the duties of a mother to his children, or of helper to their support. His children were numerous, and most of them of tender years. Much of the time which would be naturally devoted to labor for their support, must be given to the care of their insane mother and his infant offspring. His farm was small—he owed some debts; and he must have entertained a natural distrust of his ability, under such circumstances, to support his family. In addition to all this, he was himself subject to frequent and distressing attacks of epileptic fits, which was doubtless gradually breaking down both his bodily and mental vigor.

All these circumstances, unquestionably, did enfeeble his mind and impair his energies, and to a certain extent, discouraged and incapacitated him from the transaction of business as other men transact it. It was, beyond a doubt, all these circumstances taken together, the misfortunes of Sprague's family; the situation of his children—the probability

that they would require foreign support—his own
sickness, coupled with the incapacity for transacting
business, above suggested, which induced the Soci-
ety of Friends, of which he was a member, to inter-
fere, and suggest the arrangement which was finally
carried into effect.

It does not follow from all this that Sprague was legally incapacitated, by mental imbecility, from executing a valid conveyance of his real estate. If he comes within the definition of any of the various classes of legal *imbeciles*, it is that of a *non compos mentis*, which is defined, " to be a person who was of good and sound memory, and by the visitation of God hath lost it, or by sickness, grief or other accident hath wholly lost his understanding." This is a sweeping definition, and more so than this court will sanction in certain cases that may be submitted to its jurisdiction. (2 John. Ch. Rep. 232.) There are various shades of mental imbecility, and the court must exercise a sound discretion upon the proofs before them, whether it has come up to the line of legal incapacity to convey or contract. In this case, as before remarked, the proofs are voluminous and somewhat contradictory; but a careful examination of the whole, which are legally admissible, the facts testified to by the witnesses as evidence of incapacity, and even the aggregate opinions of the witnesses themselves, satisfies me that there is not in this case that proof of want of capacity which the court should require to set aside a conveyance on that ground.

Reuben Sprague, though of a weak and impaired mind, still at the time he executed the conveyance of his real and personal estate to the defendants, was of sufficient mental ability to make a legal convey-

Oct. 1839.

Sprague and others v. Duel and Duel.

ance, and they cannot be set aside in consequence of his mental imbecility at the time he executed them.

The next question is whether the evidence makes out a case of fraud or imposition; for though Sprague had, technically and strictly, mental capacity sufficient to convey, yet his weakness of understanding may have subjected him to be acted upon by improper influences, and he may have thus been led to make a conveyance which this court would set aside. If the defendants or the Society of Friends have practised, by reason of their relationship to, or influence over, Reuben Sprague, upon his mental weakness, to procure the conveyance of his property for any sinister purpose, it would present a case proper for the jurisdiction of this court, and relief in the decision of this tribunal.

In all such cases of sinister practices over men of weak or impaired intellect, to procure advantageous bargains, this court will interfere and give relief.

This is a part of the case made by the complainants' bill, and it only remains to be seen whether the proofs will sustain it. It appears in proof that the Society of Friends had assisted Sprague's family previous to his conveyance. It appears further that they felt themselves obligated to assist members of their society, who should become the objects of charity; that they feel themselves bound to give such unfortunate members that kind and considerate advice and assistance, which while it met their wants, would not degrade them into the class of the recipients of the cold, harsh and heartless support furnished under our laws by the poor fund.

It appears that Sprague laid his case before them, that with a delicate privacy it was referred to a com-

mittee, who met from time to time, and finally agreed
upon and recommended what, in their opinion, was
the most judicious mode of relief; the disposition of
his personal property to pay his debts, and the sale
of his real property for the purpose of the support of
himself and his insane wife, during their natural lives;
giving him to understand at the same time, that his
children would be provided for in a suitable way, by
the provident care of the society.   It appears, too,
that it struck some of these friends, as it would any
person, that the eldest son of Sprague was the proper
person to take the conveyance of the estate and sup-
port his father and mother; that such an idea was
suggested, but the son declined, under the circum-
stances, the difficult and annoying trust.   If, how-
ever, under all this semblance of charity and kind
feeling, it should appear that the society was actua-
ted by any motives of gain, or advantage in giving
this advice, or that the defendants were actuated by
any sinister motives in taking the conveyance, the
court would interfere and give relief.   Those trans-
actions which are conducted under the hypocritical
guise of kindness and charity, demand the stern in-
terposition of the power of this court, if there is evi-
dence of the existence of any such gross hypocrisy.
But such does not seem to be proven in this case.
There is no evidence that the advice of the commit-
tees was not honestly given. There is no proof that
the defendants used any influence to obtain the con-
veyance to themselves.  There is no proof that they
had Sprague so much in their power; that they
could use any such undue influence over him, or that
they officiously obtruded their names as the proper
grantees of Spragues property.

Oct. 1839.

Sprague and others
v.
Duel and Duel.

The proper test is to look at the case as it stood at the time, to see whether the defendants had really any strong interest in taking the property upon the terms proposed. Sprague had fifty-seven acres of land, worth, averaging the testimony of all the witnesses, twenty dollars per acre. He had some personal property, but not sufficient to pay his debts. Sprague and his wife were about forty-five years of age. The wife was insane, and the husband was subject to distressing fits. The defendants take this property and agree to pay Sprague's debts, and support Sprague and his wife during their lives. Did the contract at that time promise to be exorbitantly profitable to the defendants? so as to make it void for want of consideration?

It seems to me from the evidence that the bargain was not one to be coveted by any person. The chances of life in Sprague's wife was then good, with all the incumbrance of a state of helpless, if not mischievous insanity. The chance of Sprague's life was not so good, in consequence of his fits, but that was incumbered with the care and expense of providing for him in his sickness. And I doubt, all things considered, whether many would be found who would be willing to take the same property at the same price. This state of the case would seem to take away the motive of committing a fraud upon Sprague, or of exercising an undue influence upon him to induce him to execute the conveyance. This evidence does not show that any such fraud was in fact committed, or any such undue influence exercised. And I shall hold that at the time the conveyance was executed, there was a sufficient and adequate consideration therefor in the agreement to

support Sprague and his wife during their lives, and that such conveyance was not procured by any improper influence.

I entertain the belief that if Sprague and his wife had lived to this time, we should have heard nothing of this litigation. And I have some suspicion that the division of the Society of Friends has had no little to do with the feeling that appears to have been enlisted in this suit.

It has been urged that the consideration, to wit, the agreement to support Sprague and wife, though executed, was not delivered to Sprague. It is in proof that it was executed, and it seems to be a fair inference that it was delivered; but whether delivered or not, it could have been enforced under the proofs—and this circumstance is therefore no objection to the conclusion to which I have come.

It was further urged on the part of the defendants, that the bill should be dismissed for multifariousness. After the conclusion to which I have arrived upon the proofs, I do not think it necessary to decide this point, or how far this objection is waived by the stipulation set forth in the complainants' testimony. It is sufficient that the complainants' proofs do not, in the judgment of the court, establish their case in any aspect in which they have placed it; and for that reason the complainants' bill must be dismissed with costs to be taxed.